1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    JESSICA R.,

11                        Plaintiff,

12            v.

13    COMMISSIONER OF SOCIAL
      SECURITY,

14

15                        Defendant.

CASE NO. 3:19-CV-5546-DWC

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

16        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of

17    Defendant's denial of Plaintiff's application for disability insurance benefits ("DIB"). Pursuant

18    to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties

19    have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt 2.

20        After considering the record, the Court concludes the Administrative Law Judge ("ALJ")

21    did not err in assessing Plaintiff's testimony or the opinion of examining physician Dr. Wu.

22    Accordingly, the ALJ's finding of non-disability is supported by substantial evidence, and the

23    Commissioner's decision is affirmed.

24

## FACTUAL AND PROCEDURAL HISTORY

On October 23, 2014, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of October 20, 2014. AR 60, 340-41, 342-43. Her application was denied upon initial administrative review and on reconsideration. AR 60. An initial hearing was held before ALJ Ilene Sloan on September 27, 2017. AR 99-132. ALJ Sloan held a supplemental hearing on March 14, 2018, at which a vocational expert and medical experts W. Benton Boone, M.D., and Allan Duby, M.D. also testified. AR 133-67. In a decision dated May 31, 2018, ALJ Sloan found that Plaintiff was not disabled. AR 57-75. The Social Security Appeals Council denied Plaintiff's request for review on April 29, 2019. AR 1-7. The ALJ's decision of May 31, 2018 is the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. § 404.981.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting Plaintiff's testimony; and (2) failing to properly assess opinion evidence from examining physician Lisa Wu, M.D. Dkt. 10, pp. 2-13.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**I.      Whether the ALJ properly considered Plaintiff's testimony.**

Plaintiff maintains that the ALJ erred in evaluating her testimony concerning the impact of her eye impairment and degenerative disc disease, as well as the significance of her ability to perform certain activities of daily living. Dkt. 10, pp. 4-13.

1    In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v.*

2  *Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is

3  objective medical evidence of an underlying impairment that could reasonably be expected to

4  produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir.

5  2014). If the first step is satisfied, and provided there is no evidence of malingering, the second

6  step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can

7  provide specific findings and clear and convincing reasons for rejecting the claimant's testimony.

8  *Id.*

9         **A.      Light Sensitivity and Eye Fatigue.**

10        Plaintiff contends that the ALJ erred by not explaining why she was rejecting Plaintiff's

11  allegations concerning light sensitivity and eye fatigue. Dkt. 10, pp. 6-8. Plaintiff testified as to

12  her light sensitivity, and stated that she has to take frequent breaks from her coursework due to

13  eye fatigue and her other impairments. AR 108-11.

14        In evaluating Plaintiff's eye impairment, the ALJ provided a detailed discussion of

15  Plaintiff's allegations concerning light sensitivity and eye fatigue, as well as her treatment

16  history from 2015 through 2017. AR 66-69. The ALJ, citing the record and testimony from

17  medical expert Dr. Boone, a board-certified ophthalmologist, noted that Plaintiff's visual acuity

18  ranged from about 20/70 in one eye at worst and 20/25 in one eye at best. AR 68, 138-41, 1072-

19  76.

20        The ALJ noted that there was no evidence that Plaintiff had difficulty moving about the

21  office due to her vision problems, was able to drive when necessary, and had glasses and a

22  digital hand scanner that helped manage her symptoms. AR 68-69; *see* 20 C.F.R. §

23  404.1529(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation

24

1  of a claimant's alleged symptoms); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir.

2  2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481

3  F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient

4  to discount a claimant's testimony regarding severity of an impairment").

5      The ALJ assigned "great weight" to Dr. Boone's opinion, and incorporated all the

6  medically determinable visual impairments cited by Dr. Boone as severe impairments at step two

7  of the sequential evaluation. AR 62-63, 71-72, 139-40. The ALJ also incorporated all the visual

8  limitations assessed by Dr. Boone into Plaintiff's residual functional capacity. AR 65, 141-42.

9      The ALJ reasoned that Dr. Boone was a board-certified ophthalmologist who reviewed

10  the entire medical record, explained his conclusions in detail during the hearing, and offered an

11  opinion that was consistent with the medical record. AR 72, 138-41; *see* 20 C.F.R.

12  § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more

13  weight we will give that medical opinion."); *see also* 20 C.F.R. § 404.1527(c)(5) ("We generally

14  give more weight to the medical opinion of a specialist about medical issues related to his or her

15  area of specialty than to the medical opinion of a source who is not a specialist); 20 C.F.R. §

16  404.1527(c)(6) ("the extent to which a medical source is familiar with the other information in

17  your case record" is a relevant factor that the agency will consider in deciding the weight to give

18  to a medical opinion).

19      Contrary to Plaintiff's assertion, Dr. Boone did diagnose Plaintiff with photophobia[1],

20  which the ALJ included among Plaintiff's severe impairments. AR 62, 140. Dr. Boone did not

21

22

---

23      [1] Photophobia is defined as a sensitivity to light. *See e.g. Bryant on Behalf of Bryant v. Apfel*, 141 F.3d
   1249, 1250 (8th Cir. 1998); *Wong v. Aragona*, 61 F.3d 902, 903 (4th Cir. 1995) (unpublished); *Hawkins v. Social
24  Sec. Admin.*, 368 Fed. Appx. 136, 139 (Fed. Cir. 2010).

1 assess any functional limitations related to Plaintiff's photophobia or other symptoms beyond

2 those already contained in the RFC. AR 65, 141.

3      Dr. Boone testified that he reviewed the entire medical record, paying particular attention

4 to those exhibits containing information about Plaintiff's vision. AR 139-40. The record does not

5 contain another opinion from an ophthalmologist concerning Plaintiff's visual impairments, and

6 the Court cannot say that the ALJ erred by adopting Dr. Boone's opinion as to Plaintiff's visual

7 limitations. In citing Plaintiff's ability to manage her visual impairment with conservative

8 measures, the ALJ has provided an additional clear and convincing reason for discounting

9 Plaintiff's testimony.

10      **B.      Degenerative Disc Disease.**

11      Plaintiff contends that the ALJ erred in evaluating her allegations concerning her lumbar

12 and cervical degenerative disc disease. Dkt. 10, pp. 8-9.

13      The ALJ found Plaintiff's degenerative disc disease to be a severe impairment at step

14 two. AR 63. In discounting Plaintiff's testimony concerning her back impairment, the ALJ cited

15 imaging results and treatment records that are inconsistent with Plaintiff's allegations. AR 66-67,

16 71.

17      Inconsistency with objective evidence may serve as a clear and convincing reason for

18 discounting a claimant's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d

19 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom

20 testimony "*solely* because the degree of pain alleged is not supported by objective medical

21 evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks

22 omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying

23 rule to subjective complaints other than pain).

24

1    In assessing Plaintiff's back complaints, the ALJ appears to have relied heavily on the

2    testimony of Dr. Duby, the board-certified rheumatologist and internal medicine physician who

3    testified at the hearing. AR 146-56, 1077-79. The ALJ adopted all the restrictions assessed by

4    Dr. Duby into Plaintiff's RFC, except for restricting Plaintiff to occasional, rather than frequent

5    exposure to humidity and wetness, and restricting Plaintiff's exposure to unprotected heights and

6    moving mechanical parts, consistent with Dr. Boone's opinion concerning Plaintiff's visual

7    limitations. AR 65, 141, 149-50, 1080.

8    The ALJ assigned "great weight" to Dr. Duby's opinion, reasoning that Dr. Duby was a

9    board-certified rheumatologist and internal medicine physician who reviewed the entire medical

10   record, explained his conclusions in detail during the hearing, and offered an opinion that was

11   consistent with the medical record. AR 71; *see* 20 C.F.R. §§ 404.1527(c)(3), 404.1527(c)(5),

12   404.1527(c)(6). The ALJ also reasoned that Dr. Duby's opinion was consistent with the medical

13   record and Dr. Boone's opinion. AR 71; *see* 20 C.F.R § 404.1527(c)(4) ("Generally, the more

14   consistent a medical opinion is with the record as a whole, the more weight [the Social Security

15   Administration] will give to that medical opinion.").

16   The ALJ further found that Dr. Duby's opinion was consistent with Plaintiff's "noted

17   benefit from treatment and from conservative medication management" including

18   mycophenolate and aspirin. AR 68-69, 71; *see* 20 C.F.R. § 404.1529(c)(3)(iv); *Wellington,* 878

19   F.3d at 876; *Tommasetti v. Astrue*, 533 F.3d at 1040 (citations omitted).

20   In citing the inconsistency of Plaintiff's allegations with the objective evidence, the

21   opinions of Dr. Duby and Dr. Boone, and Plaintiff's improvement with conservative treatment,

22   the ALJ has provided clear and convincing reasons for discounting Plaintiff's allegations

23   concerning her back pain.

24

1 **C.    Activities of Daily Living.**

2    Plaintiff next contends that the ALJ erred in citing her activities of daily living as a

3 reason to discount her symptoms allegations. Dkt. 10, pp. 10-13. An ALJ may discredit a

4 claimant's testimony when the claimant reports participation in everyday activities indicating

5 capacities that are transferable to a work setting. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169

6 F.3d 595, 600 (9th Cir.1999). However, disability claimants should not be penalized for

7 attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d

8 715, 722 (9th Cir. 1998), citing *Cooper v. Bowe*n, 815 F.2d 557, 561 (9th Cir.1987) (noting that

9 a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for

10 benefits).

11    Here, the ALJ reasoned that Plaintiff reported "some significant activities of daily living

12 that are not consistent with the extremity of her complaints." AR 71. Specifically, the ALJ found

13 that Plaintiff:

14    [D]oes take online college courses, one class at a time and spends time online.
   She reported that she hopes to work part-time at home online as a writer/editor.

15    She is able to drive when necessary despite her vision. She shops in stores and
   drives her son to functions. She also watches "a lot" of television despite her

16    vision problems. She prepares complete meals at times, although allegedly needs
   help with pans and jars.

17 AR 71.

18    To the extent that the ALJ relied upon Plaintiff's ability to perform these basic activities

19 of daily living to discount her allegations concerning her visual and musculoskeletal

20 impairments, the ALJ erred. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("This

21 court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

22 activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

23 any way detract from her credibility as to her overall disability. One does not need to be 'utterly

24

1  incapacitated' in order to be disabled."), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989);

2  *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals,

3  self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as

4  occasional shopping outside the home, are not similar to typical work responsibilities.").

5  However, because the ALJ has provided other clear and convincing reasons for

6  discounting Plaintiff's testimony concerning her visual and musculoskeletal impairments, any

7  error in relying upon Plaintiff's activities of daily living is harmless. *See supra* Sections I.A and

8  I.B; *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that harmless error principles

9  apply in the Social Security context); *Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45

10  (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

11  2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error

12  was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

13  **II.      Whether the ALJ properly considered the medical opinion evidence.**

14  Plaintiff maintains that the ALJ failed to properly consider opinion evidence from

15  examining physician Dr. Wu. Dkt. 10, pp. 2-4.

16  In assessing an acceptable medical source, an ALJ must provide "clear and convincing"

17  reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*

18  *v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

19  1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining

20  physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons

21  that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*

22  *v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

23  1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts

24

1  and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*

2  *v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

3  Cir. 1989)).

4      On October 30, 2015, Dr. Wu provided a detailed overview of Plaintiff's impairments

5  and the symptoms caused by these impairments. AR 445-53, 1060-68. Dr. Wu described the

6  symptoms stemming from Plaintiff's auto-immune disorder, irritable bowel syndrome, visual

7  impairment, headaches, dizziness, and lumbar spine disorder. *Id.* Dr. Wu opined that Plaintiff

8  would be able to sit, stand and/or walk for 2 hours in an 8-hour day, lift and carry up to 10

9  pounds occasionally, never stoop or twist, and occasionally perform other postural and

10  manipulative activities. AR 451-52, 1066-67. Dr. Wu opined that Plaintiff would have a range of

11  environmental limitations, and stated that due to her symptoms, Plaintiff would be absent from

12  work more than 4 days per month. AR 452, 1067. Dr. Wu also opined that Plaintiff would have a

13  range of work-related mental limitations. AR 453, 1068.

14      On February 28, 2018, Dr. Wu updated her assessment, noting that most of Plaintiff's

15  impairments were either unchanged or stable since her October 2015 assessment, except

16  Plaintiff's headaches and dizziness, which "comes and goes." AR 1058. Dr. Wu did note that

17  Plaintiff was having new neurological symptoms, including body twitches, affecting all parts of

18  her body, and that an MRI was required to diagnose this possible neurological condition. AR

19  1059.

20      The ALJ assigned "little weight" to Dr. Wu's opinion, reasoning that Dr. Wu cited to

21  objective findings and symptoms that were not consistent with or well supported by the

22  longitudinal treatment record. AR 72. An inconsistency with the medical evidence may serve as

23  a specific, legitimate reason for discounting limitations assessed by a physician. *See* 20 C.F.R. §

24

1 | 404.1527(c)(4). However, "where the purported existence of an inconsistency is squarely

2 | contradicted by the record, it may not serve as the basis for the rejection of an examining

3 | physician's conclusion." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

4 |      The ALJ cites a treatment note from February 18, 2016, in which Dr. Wu includes a

5 | diagnosis of intervertebral cervical disc disorder with myelopathy. AR 72, 938. The ALJ

6 | contrasted this with Dr. Duby's hearing testimony, in which he disagreed with Dr. Wu's

7 | conclusion that Plaintiff had lumbar degenerative disc disease with myelopathy, reasoning that

8 | the record did not contain diagnostic evidence of pinching in Plaintiff's spinal cord. AR 72, 150.

9 |      Dr. Wu based her assessment of Plaintiff's lumbar impairment on an MRI from

10 | September 8, 2014, which indicated that Plaintiff had moderate disc degeneration at the L5-S1

11 | level and facet hypertrophy at L4-L5. AR 449, 641, 644, 1064. Plaintiff contends that the results

12 | of this MRI are consistent with Dr. Wu's diagnosis of lumbar myelopathy, since the facet

13 | hypertrophy in Plaintiff's lumbar spine would impact the adjacent nerves, supporting the

14 | diagnosis of myelopathy. Dkt. 10, p. 3. Dr. Duby testified that he reviewed the entire medical

15 | record, including the September 2014 MRI cited by Dr. Wu. AR 147.

16 |      As such, two acceptable medical sources, having reviewed the same evidence, have

17 | reached different conclusions about its significance. Where the evidence is susceptible to more

18 | than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

19 | must be upheld. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v.*

20 | *Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999))).

21 |      Plaintiff argues that the ALJ erred in assigning greater weight to Dr. Duby's opinion

22 | because Dr. Duby's opinion cannot, by itself, serve as substantial evidence to support the ALJ's

23 | findings. Dkt. 13, p. 2, citing *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017); *see also*

24 |

1 *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (the opinion of

2 a non-examining physician cannot, by itself, constitute substantial evidence that justifies the

3 rejection of the opinion of an examining or treating physician) (internal citations omitted).

4      In assigning greater weight to Dr. Duby's opinion, the ALJ reasoned that Dr. Duby was a

5 board-certified rheumatologist and internal medicine physician who reviewed the entire medical

6 record, explained his conclusions in detail during the hearing, and offered an opinion that was

7 consistent with the medical record. AR 71; *see supra* Section I.B. Accordingly, the ALJ has

8 provided several independent bases for assigning more weight to Dr. Duby's non-examining

9 opinion, and the Court cannot say that the ALJ erred in assigning less weight to Dr. Wu's

10 opinion.

11      **III.    Additional Evidence.**

12      The record contains evidence submitted by Plaintiff after the ALJ issued her decision. AR

13 8-44, 50-56, 83-98. The Appeals Council denied review of Plaintiff's claim and opted not to

14 exhibit this evidence, reasoning that it either did not relate to the period at issue or did not show a

15 reasonable probability that it would change the outcome of the ALJ's decision. AR 2.

16      The Court must consider this additional material in determining whether the ALJ's

17 decision is supported by substantial evidence. *See Brewes v. Commissioner of Social Security*,

18 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence for the first time to the

19 Appeals Council, which considers that evidence in denying review of the ALJ's decision, the

20 new evidence is part of the administrative which the district court must consider in determining

21 whether the Commissioner's decision is supported by substantial evidence).

22      The material submitted to the Appeals Council contains lab test results from July 2018

23 which were generally normal, except for signs of anticardiolipin and beta-2 glycoprotein IgM

24

1  antibodies, which was consistent with Plaintiff's diagnosis of retinal vasculitis. AR 8-22. This

2  material also contains rheumatology treatment notes from July 2018; imaging of Plaintiff's feet

3  and sacroiliac joints indicating no abnormalities; an MRI of Plaintiff's lumbar spine from July

4  24, 2018 indicating no acute osseous abnormalities and moderate to severe degenerative changes

5  at L5-S1; and a urine test that was normal except for an elevated white blood cell count. AR 24-

6  44.

7        This evidence does not relate back to the period prior to the ALJ's May 2018 decision

8  and is broadly consistent with the evidence the ALJ reviewed with respect to Plaintiff's eye and

9  back impairments. Accordingly, the Court cannot say that this evidence, if credited, would

10  prevent the ALJ's decision from being supported by substantial evidence. See *Mengistu v.*

11  *Colvin*, 537 F. App'x 724, 725 (9th Cir. 2013), citing *Mayes v. Massanari*, 276 F.453, 462 (9th

12  Cir. 2001) (a claimant seeking remand of a denial of Social Security disability benefits based on

13  new evidence is required to demonstrate that there is some reasonable possibility that this new

14  evidence would have changed outcome of the administrative hearing).

15        The new material also contains treatment notes from February and July 2018 indicating

16  that Plaintiff was beginning to experiences symptoms of an as yet undiagnosed neurological

17  condition, and contains an MRI from March 20, 2018 indicating multiple non-specific white

18  matter foci that could indicate demyelinating disease. AR 50-56, 85, 87, 92, 97.

19        This evidence suggests that Plaintiff may have begun experiencing symptoms of a

20  neurological disorder some time in 2018. The Court notes that the record available to the ALJ

21  contains a treatment note written by Dr. Wu in February 2018 indicating that Plaintiff was

22  experiencing new neurological symptoms. AR 1058-59. However, the evidence does not contain

23  a diagnosis of a medically determinable impairment that could cause these symptoms, and the

24

1  Court cannot say that this evidence, if credited, would prevent the ALJ's decision from being

2  supported by substantial evidence.

3  CONCLUSION

4  Based on the foregoing reasons, the Court hereby finds the ALJ properly concluded

5  Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is affirmed and

6  this case is dismissed with prejudice. The Clerk is directed to enter judgment for Defendant and

7  close the case.

8  Dated this 10th day of January, 2020.

9

10  David W. Christel
    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24